1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10

GREAT-WEST LIFE & ANNUITY
INSURANCE CO., *et al*.,                     )
                                                              )      Case No.  2:11-cv-02082-APG-CWH

11

                         Plaintiff,                     )      **ORDER**
                                                              )

12

vs.                                                         )
                                                              )

13

AMERICAN ECONOMY INSURANCE
CO., *et al*.,                                          )
                                                              )

14

                                                              )
                         Defendants.                  )

15

────────────────────────────────

16

          This matter is before the Court on Plaintiffs' Motion for a Ruling that No Valid Privilege

17

Applies (#96), filed April 2, 2013; Defendants' Response (#107), filed April 19, 2013; and

18

Defendants' Reply (#113), filed May 3, 2013.  The Court has also considered the parties'

19

arguments from the May 15, 2013 hearing; Plaintiffs' Supplemental Brief (#123), filed June 3,

20

2013; Defendants' Supplement (#129), filed June 24, 2013; and Plaintiffs' Response to

21

Defendants' Supplement (#134), filed July 15, 2013.

22

          Additionally, the Court will consider Plaintiffs' Motion (#124), filed June 6, 2013;

23

Defendants' Response (#128) and Countermotion (#127), filed June 24, 2013; Plaintiffs' Reply

24

(#130), filed July 5, 2013.  In conjunction with Defendants' Countermotion (#127), the Court will

25

consider Plaintiffs' Motion to Strike (#131), filed July 8, 2013; Plaintiffs' Response to Defendants'

26

Countermotion (#133), filed July 11, 2013; Defendants' Reply (#135), filed July 22, 2013; and

27

Plaintiffs' Response to Defendants' Motion to Strike (#136), filed July 24, 2013.

28

**BACKGROUND**

          It is not necessary to set forth a detailed factual background to understand and resolve the

motions under consideration.  This is an insurance coverage dispute wherein Plaintiffs (hereinafter "Great West") seek a declaration of the rights and obligations between the parties and damages for alleged (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) violation of NRS 686A.310, and (4) breach of fiduciary duties.  *See* Amend. Compl. (#13).  By way of a general synopsis, the parties seek a decision regarding Defendants' (hereinafter "AEI") attempt to claw back documents subject to a claim of privilege and inadvertent production.

**1.  Great West Motion #96**

This motion relates to a limited number of documents (hereinafter "Kezer documents") provided by AEI to its testifying insurance expert, Mr. John Kezer, for use in preparing his expert report.  The Kezer documents are attached as Exhibits 1-12 to the motion, which has been sealed.  The Kezer documents were disclosed by AEI to Great West as part of a larger production of documents provided to Mr. Kezer in preparing his expert report.  *See* Ex. D-3 attached to Defs' Response (#107).  Shortly after receipt, Great West attached the Kezer documents to a supplemental filing submitted in support of several then pending discovery motions.  *See* Notice (#92).  The same day the Kezer documents were filed, counsel for AEI sent counsel for Great West a letter objecting to the filing, indicating that the disclosure was inadvertent, and requesting that the Kezer documents be returned and all copies in counsel's possession destroyed.  *See* Ex. 13 attached to Pls' Mot. (#96).  Pursuant to motion (#93), the supplemental filing to which the Kezer documents are attached is sealed.  *See* Order (#94).

Great West seeks an order that no valid privilege applies to the Kezer documents and that AEI is not entitled to claw back the documents by claiming inadvertent production.  The request is primarily premised on three arguments.  First, that the Kezer documents are neither privileged nor protected work product because they are ordinary business documents containing garden variety claims adjusting.  To the extent the Kezer documents were authored by attorneys, Great West asserts the attorneys were simply acting as claims adjusters and the documents are not entitled to any protection.  Second, citing what it identifies as a "bright-line rule," Great West asserts that the production and consideration of the Kezer documents by a retained expert renders the documents discoverable because a party that produces data or facts for consideration to a testifying expert

1    cannot subsequently recover those documents by claiming inadvertent production.  Great West

2    points to deposition testimony wherein Mr. Kezer stated that he reviewed all the documents

3    provided by Defendants to prepare his report.  Lastly, citing Fed. R. Evid. 502, Great West argues

4    that any purported privilege has been waived because disclosure of the Kezer documents was not

5    inadvertent, AEI failed to take reasonable steps to prevent disclosure, and AEI unreasonably

6    delayed in seeking to claw back the Kezer documents.

7         In response, AEI describes the handling of the Kezer documents by opposing counsel as a

8    "textbook example of what lawyers should <u>not</u> do when presented with a situation like this."  *See*

9    Resp. (#107) at 2:19-23.  Requesting that the Court not reward the improper tactics employed upon

10   receipt of plainly privileged documents, AEI asks that the motion be denied and counsel for Great

11   West be ordered to immediately return all copies and make no further use of the Kezer documents.[1]

12   AEI argues that the Kezer documents were previously identified as privileged and inadvertently

13   produced during the production of "several thousand pages of scanned files that . . . retained expert

14   John Kezer[] had received."  *See* Ex. A attached to Resp. (#107); Resp. (#107) at 3:4-8.

15   Immediately upon learning of the production of the Kezer documents, counsel for AEI sent a claw

16   back letter explaining his view of what caused the inadvertent production.  AEI concedes that the

17   Kezer documents were included as part of a larger group of documents provided to Mr. Kezer, but

18   contends that the documents were never considered by Mr. Kezer.  *See* Decl. of John Kezer

19   attached as Ex. C attached to Resp. (#107).  As they were never considered, AEI argues they are not

20   subject to disclosure.  AEI claims that it took careful, appropriate steps to protect against

21   production of the privileged documents but made a simple mistake by inadvertently including the

22   documents in an electronic folder.  Ultimately, despite conceding production of the privileged

23   documents to its expert, AEI argues that claw back of the documents is appropriate because Mr.

24   Kezer never saw or considered the documents at issue.

25        Great West replies that "[t]his case presents a starker and more compelling case against

26

27        [1] AEI asserts that the handling of the Kezer documents by counsel for Great Wester was in violation of

28   applicable ethical rules.

3

claw back attempt than <u>any</u> of the numerous reported and unreported decisions cited by the parties in their respective briefs, including decisions in this circuit." *See* Reply (#113) at 2:3-5 (emphasis in original). Great West asserts claw back is not appropriate and, if permitted, would be "unprecedented and extraordinary . . . [and] this case would stand alone as an anomalous dissenting voice against the nearly uniform set of rules and procedures adopted by courts across the country." *Id*. at 3:3-6. Great West insists it has not treated the Kezer documents inappropriately and is permitted to present the documents for determination of both the claw back and privilege claims. Great West urges the Court to reject the argument that documents provided to a retained expert can be clawed back if the expert does not review them. It further urges the Court to reject the "sham" declaration from Mr. Kezer in favor of his sworn deposition testimony that he saw and reviewed the Kezer documents. Finally, even if the Court reaches the claw back analysis, Great West claims that none of the factors supporting claw back have been met.

On May 15, 2013, after briefing on motion (#96) was complete, the Court conducted a sealed hearing wherein counsel presented oral argument in support of their respective positions. For the most part, the arguments were consistent with the briefing; however, counsel for AEI did raise an additional argument not raised in briefing regarding the effect of the Scheduling Order (#24) and Protective Order (#38) on the claw back issue. Specifically, counsel argued that the provisions set forth in the scheduling order and protective order address the parties' obligations in the event of inadvertent disclosure and those agreed obligations should be considered as paramount under Fed. R. Evid. 502(d) and (e). The parties also agreed that the ethics issue raised in the briefing was largely a sideshow. The Court did not request any supplemental briefing from the parties.

**2. Supplemental Briefing Related to Great West Motion (#96)**

On June 3, 2013, Great West filed a supplemental brief (#123) indicating that it had received another claw back letter from AEI regarding a series of three documents allegedly disclosed inadvertently. It does not appear the documents were in the document package provided to AEI's expert John Kezer and produced to Great West as part of the disclosure that included the Kezer documents. Nevertheless, Great West requests that the Court consider this additional claw

4

1  back request as further evidence that AEI has "been careless and [has] failed to take the reasonable

2  precautions necessary to preserve any right to claw back documents." *See* Suppl. (#123) at 2:12-13.

3  AEI did not file a response to Great West's supplement (#123) but did, on June 24, 2013,

4  file its own Supplemental Brief (#129) requesting that the Court consider additional authorities

5  "that call for enforcing claw back agreements entered into by counsel and approved by the court

6  under Fed. R. Evid. 502(d) and (e)." *See* Suppl. (#129) at 2:3-4.  Specifically, AEI requests that the

7  Court consider *Rajala v. McGuire Woods*, 2010 WL 2949582 (D. Kan.) and N. Crystal, *Inadvertent*

8  *Production of Privileged Information In Discovery in Federal Court: The Need for Well-Drafted*

9  *Clawback Agreements*, 64 South Carolina L. Rev. 581 in making its determination on the claw

10  back question.  The cited authorities are discussed in AEI's Motion (#127) (discussed infra) and,

11  according to AEI, "support and expand on the argument for denying [Motion #96]" and "should

12  make it unnecessary for the Court to analyze the factors under Fed. R. Evid. 502(b) in order to

13  decide [Motion #96]."  Suppl. (#129) at 2:11-16.

14  Great West responded arguing that the supplemental authorities are improper because they

15  raise new arguments.  Great West further asserts that the cited law review article is not an authority

16  and should be disregarded.

17  **3.  Great West Motion (#124)**

18  Just a few days after filing its supplement (#123), Great West filed a motion seeking a

19  ruling on the claw back attempt by AEI regarding the documents identified in the supplement.  *See*

20  Ex. 1 attached to Motion (#124) (May 28, 2013 AEI claw back letter).  Great West contends that

21  AEI produced the documents five separate times within the same production without taking

22  adequate precautions to prevent production.  Prior to receiving the claw back letter, Great West

23  scanned the entire production but did not conduct a specific or detailed examination.  To avoid

24  controversy, Great West returned the documents without examining them.  Thus, Great West also

25  seeks leave to examine the inadvertently disclosed documents to determine whether they are, in

26  fact, privileged.

27  On June 24, 2013, AEI made two separate filings: a response and a separate motion asking

28  the Court confirm its claw back attempt regarding the documents identified in Great West motion

1  (#124).  *See* Motion (#127) and Resp. (#128).  AEI filed the separate motion to "more

2  appropriately" address the issue and permit the Court to "review the facts based on information

3  [AEI] provide[s], rather than [Great West's] inaccurate characterization of those facts."  *See* Resp.

4  (#128) at 2:21-24.  Calling the characterization of the facts by Great West "hyperbole and false

5  conclusions," AEI argues that claw back is appropriate based on language in both the protective

6  and scheduling orders, which is binding under Fed. R. Evid. 502(d) and (e).  AEI also argues that

7  the Court has already determined that the documents at issue are privileged and there is no need to

8  revisit the issue.  The response incorporates the arguments set forth in AEI motion (#127).

9  In reply, Great West urges the Court to reject any claim that would have the result of

10  exempting AEI from Fed. R. Evid. 502(b).  *See* Reply (#130) at 2:2-4.  Great West describes AEI's

11  interpretations of the protective and scheduling order as "creative" and disputes that the orders

12  support the result advocated by AEI.

13  **4.  AEI Motion (#127) and Great West Motion to Strike (#131)**

14  As previously noted, by way of its motion (#127) AEI asks the Court to find that the

15  Scheduling Order (#24) and Protective Order (#38) establish the parties obligations if there is

16  inadvertent disclosure.  AEI frames certain provisions of the respective orders as claw back

17  provisions and asserts that, under those provisions, Great West is not entitled to review or use the

18  documents in question.  AEI argues the provisions must be enforced in light of Fed. R. Evid. 502(d)

19  and (e), *Rajala v. McGuire Woods*, 2010 WL 2949582 (D. Kan.), and N. Crystal, *Inadvertent*

20  *Production of Privileged Information In Discovery in Federal Court: The Need for Well-Drafted*

21  *Clawback Agreements*, 64 South Carolina L. Rev. 581.  AEI claims it unnecessary for any analysis

22  under Fed. R. Evid. 502 because the agreed orders are binding on the signatory parties.  AEI further

23  states that the imposition of "rigid formulaic requirements for enforceable claw back language"

24  would defeat the purpose of entering the agreement in the first instance and invite "many more

25  discovery disputes . . . when one sees a strategic advantage to contesting the inadvertent production

26  of documents."  *See* Motion (#127) at 9:17-20.  Lastly, AEI reasserts its position that, even if

27  viewed through the lens of Rule 502, the production was inadvertent and claw back is appropriate.

28  Before filing its response, Great West filed a motion to strike AEI's motion characterizing it

6

1    as "an improper attempt . . . to have the last word on an issue that has already been fully briefed."

2    *See* Mot. (#131) at 2:6-7.  Great West also argues that the motion itself violates the protective order

3    in this case, which provides that "the receiving party, not the party asserting 'inadvertent'

4    disclosure, must file a motion to challenge the assertion of privilege within seven days of receiving

5    a claw back notice."  According to Great West, the additional briefing creates an unnecessary

6    burden and should be considered solely as a response to Great West motion (#124).  As a

7    cautionary measure, Great West also filed a response (#133) incorporating by reference its reply

8    brief (#130) submitted in support of its "first-filed motion on these same issues."  *See* supra.

9         AEI filed a reply arguing that the position advocated by Great West is extreme and would

10   undermine the implementation of Rule 502(d) and (e) in Nevada.  AEI urges the Court to view the

11   orders as a means "to simplify the discovery process rather than create traps for litigants who fail to

12   invoke some particular verbal formula for a claw back agreement."  AEI also filed a response

13   describing the Great West motion to strike (#131) as "another instance of [Great West]

14   overreaching."  *See* Resp. (#136) at 1:28.  Citing its own email communication with Great West,

15   AEI asserts that Great West motion (#124) was not necessary because if Great West was not

16   willing to comply with the claw back request then AEI was prepared to file a motion compelling

17   compliance.  *Id.* at 2:4-12.  AEI also argues that the briefing related to motion (#127) raises several

18   issues not raised in the prior briefing which ought to be considered.  In reply, Great West asserts

19   that the operative protective order, not AEI, governs the procedures for challenging the assertion of

20   privilege.

21                                   **DISCUSSION**

22        The briefing on the various motions under consideration began on April 2, 2013, when

23   Great West filed its motion (#96).  Since the filing of that motion, the parties have exchanged

24   motions and briefing related, directly and indirectly, to the original relief requested in motion (#96).

25   As a result, full briefing on the issues was not complete until August 5, 2013.  Much of the briefing

26   overlaps.  Much of the briefing is duplicative.  Much of the briefing is unnecessary.  The Court has

27   patiently allowed the parties to air their disputes and, though not readily apparent if measured solely

28   on the volume of briefing, the disputes present relatively straightforward, non-complex issues

1   which the Court will address in the manner it believes most cogent.

2   **A. Ethical Violations**

3   Counsel have done an admirable job representing their respective clients' interests.

4   Nevertheless, as with many contested issues, it has not been without an acrimonious undercurrent.

5   In particular, the parties presented extensive argument regarding whether the Kezer documents

6   were handled by Great West ethically in both the briefing and hearing related to Great West's

7   motion (#96).  AEI described the actions taken by Great West as "a textbook example of what

8   lawyers should not do when presented a situation like this" and argued that the actions violated

9   ethical norms.  Because counsel for Great West is a member of the Colorado bar and appearing in

10  this matter *pro hac vice*, AEI cited to a Colorado Ethics Opinion to "provide guidance about

11  Colorado ethics standards for Great West's non-Nevada counsel who are licensed in Colorado."

12  The parties agreed during May 15, 2013 hearing that the ethics issue was largely a sideshow.  The

13  Court agrees and finds there is insufficient evidence to support the conclusion that there has been

14  an ethical breach in this matter.[2]

15  **B. Great West Motion to Strike (#131)**

16  Characterizing it as "an improper attempt . . . to have the last word on an issue that has

17  already been fully briefed," Great West filed its motion to strike AEI's motion (#127) claiming the

18  additional motion creates an unnecessary burden for both itself and the Court.  Great West further

19  claims AEI motion (#127) was filed in violation of the process agreed between the parties and set

20  forth in the protective order (#38).  Great West requests that the motion be stricken and the

21  substantive content be considered solely as a response to motion (#124).  AEI, for its part, describes

22  the motion to strike as "overreaching" and cites its own email to Great West asserting a motion was

23  not necessary because if Great West was not willing to comply with the clawback request then AEI

24  would file a motion.  AEI also argues that all of the briefing related to motion (#127) should be

25

26  [2] The undersigned notes that counsel admitted to practice in this case *pro hac vice* must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time

27  to time by the Supreme Court of Nevada, except as such may be modified by this Court."  *See* Local Rule ("LR") IA 10-7(a).  Ethical opinions interpreting rules of professional conduct from Colorado, though potentially

28  persuasive, are not binding on this Court.

1    considered because it raises issues not previously raised.

2        Great West cites the parties' protective order in support its motion to strike. "[A] protective

3    order based on a written agreement between the parties is subject to the rules of contractual

4    interpretation, including that the agreement should be enforced in accordance with the ordinary

5    meaning of the language used in the agreement." *See Koninklijke Philips Electronics N.V. v. KXD*

6    *Technology, Inc.*, 2007 WL 2407038 *2 (D. Nev.) (citing *In re Sulfuric Acid Antitrust Litig.*, 235

7    F.R.D. 407, 418 (N.D. Ill. 2006). An agreed protective order "should be given a reasonable or

8    common sense interpretation in light of its purposes." *Koninklijke*, 2007 WL 2407038 (citing *In re*

9    *Dual-Deck Video Cassette Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (holding that a

10   protective order should be read in a reasonable and common sense manner so that its prohibitions

11   are connected to its purpose)).

12       Based on the plain language of the parties' protective order, it is the undersigned's view that

13   Great West motion to strike (#131) should be granted and AEI's motion (#127) construed as a

14   response to Great West's motion (#124).[3] Contrary to AEI's contention, all of the briefing related

15   to the two motions revolves around AEI's attempt to claw back three documents included in the

16   March 13, 2013 document production. There is nothing new presented and no variation in the

17   arguments from the parties in the briefing on motion (#127). Indeed, Great West simply

18   incorporates its reply brief (#130), which responds to the exact arguments raised by AEI in its

19   motion (#127).

20       Nor is the Court persuaded by AEI's argument that it should have the last word on the issue.

21

22   _____

     [3] The Court notes that the motion to strike would not be proper under Rule 12(f) because it seeks to
23   strike a motion, not a pleading. *See Mazzeo v. Gibbons*, 2010 WL 3910072 (D. Nev.) (a motion to strike under
     Rule 12(f) is limited to pleadings and pleadings do not include motions and other papers) (citing *United States v.*
24   *Crisp*, 190 F.R.D. 546, 550-51 (E.D. Cal. 1999) (citations omitted)). A court retains the inherent authority to
     strike a party's submissions other than pleadings. *See Mazzeo*, 2010 WL 3910072 *3 (D. Nev.) (citing *Metzger v.*
25   *Hussman*, 682 F.Supp. 1109, 1110 (D. Nev. 1988); *Calkins v. Shapiro & Anderson, L.L.P.*, 2005 WL 3434718 *3
     (D. Ariz.)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (recognizing the district court's
26   inherent power and discretion to sanction litigants or attorneys). An alternative basis for striking improper filings
     is the Court's "inherent power over the administration of its business. It has inherent authority to regulate the
27   conduct of attorneys who appear before it [and] to promulgate and enforce rules for the management of litigation
     . . . ." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (citations omitted). A court's authority includes the
28   ability to enter and enforce protective orders.

Great West motion (#124) was not preemptive, improper, or unnecessary.  It is precisely what the parties agreed to in their protective order, which provides:

> Upon discovery by the Receiving Party, or receipt of written notice from the Disclosing Party identifying privileged or protected Documents that were inadvertently produced, the receiving party shall within seven (7) business days either: (a) return or certify the destruction of all such documents, all copies, and any work product or portions of any work product containing or reflecting the contents of the subject materials; or (b) after attempting to resolve any dispute with opposing counsel informally, file a motion to challenge the assertion of privilege and tender the subject documents for in camera review with the motion.

*See* Protective Order (#38) at ¶ 12.  The language of the protective order largely mirrors the process laid out in Rule 26 for challenging the assertion of privilege.  *See* Fed. R. Civ. P. 26(b)(5)(B) ("If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.").

An admitted purpose for AEI's motion (#127) is to ensure it has the final word on the issue presented by Great West in motion (#124).  Thus, though stricken, all of the briefing up until the filing of AEI's reply (#135) will still be considered.  The Court finds, however, that AEI's reply (#135) is an improper surreply.  Local Rule 7–2(a)-(c) allows a motion, a response and a reply.  No provision exists for filing a surreply and "may only be filed by leave of court, *and only to address new matters raised in a reply to which a party would otherwise be unable to respond.*"  *Kanvick v. City of Reno,* 2008 WL 873085, at *1, n. 1 (D. Nev.) (emphasis in original). Further, surreplies "are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter."  *Lacher v. W.,* 147 F.Supp.2d 538, 539 (N.D. Tex. 2001). The reply does not address new matters.  It simply reiterates AEI's arguments regarding the meaning and applicability of the protective order and scheduling order on the claw back issue.

The Court will also exercise its inherent authority (*see* supra at n. 3) to strike the following

filings: Great West Supplemental Brief (#123), AEI Supplemental Brief (#129), and Great West Response to AEI Supplemental Brief (#134).  None of these filings is necessary to resolution of the motion.  Great West Supplemental Brief (#123) is simply notification of the additional claimed inadvertent disclosure, which is addressed in motion (#124).  AEI Supplemental Brief (#129) identifies additional points and authorities in support of its arguments related to motion (#96).  AEI did not obtain leave to file the additional briefing and, in fact, declined the need to do so during the May 15 hearing.  Great West Supplemental Response (#134) incorrectly argues that AEI did not raise the arguments set forth in its supplemental filing in the briefing related to motion (#96).  Though not expressly raised in the briefing, AEI did make the arguments at the hearing and the Court will consider the arguments in relation to the motion (#96).  Because the arguments and authorities mirror those set forth in briefing related to motion (#124), it is not necessary to consider any of the arguments set forth in the identified supplemental filings.

### C. Privilege

The primary issues presented by the parties are (1) whether certain documents disclosed by AEI are privileged and (2) whether the privilege, if applicable, has been waived under Fed. R. Evid. 502.  As previously noted, the documents at issue are different and were disclosed at different times.  Great West motion (#96) relates to the limited number of documents provided by AEI to its testifying insurance expert, Mr. John Kezer, for use in preparing his expert report–the Kezer documents.  Great West motion (#124) identifies three additional documents (hereinafter "AEI documents") produced separately from the Kezer documents.  Though the legal issues are intertwined, the act of disclosing the documents was separate.  Consequently, the Court will refer to the identified documents separately.

Before addressing whether there has been a waiver of privilege under Fed. R. Evid. 502, the Court must first determine whether the documents at issue are privileged in the first instance.  *See Multiquip, Inc. v. Water Management Systems LLC*, 2009 WL 4261214 *3 (D. Idaho)("[W]hen deciding whether inadvertently-produced documents waives any privilege, a two-step analysis must be done.  First, it must be determined if the material in question is actually privileged; it is axiomatic that FRE 502 does not apply unless privileged or otherwise protected documents are

1  produced."); *see also* Fed. R. Evid. 502, 2011 Adv. Comm. Notes ("The rule makes no attempt to

2  alter federal or state law on whether a communication or information is protected under the

3  attorney-client privilege or work-product immunity as an initial matter."). The attorney-

4  client privilege has long been recognized as serving important interests, including encouraging candid

5  communications between client and counsel. *See e.g Upjohn Co. v. United States*, 449 U.S. 383,

6  390-91 (1981). The privilege is strictly construed because it can impede full and free discovery of

7  the truth. *Weil v. Inv. Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

8      Because this is a diversity action which asserts state law claims and counterclaims, Nevada

9  law governs the assertion of privilege. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs

10  privilege regarding a claim or defense for which state law supplies the rule of decision."). Nevada

11  Revised Statute 49.055 codifies Nevada law on the attorney-client privilege, which applies to

12  confidential communications: (1) between a client or his representative and his lawyer or his

13  lawyer's representative; (2) between his lawyer and his lawyer's representative; and (3) made for

14  the purpose of facilitating the rendition of professional legal services to the client, by the client or

15  the lawyer to a lawyer representing another in a matter of common interest. *Pacific Coast Steel v.*

16  *Leany*, 2011 WL 4573243 (D. Nev.).

17                    **1. Kezer Documents**

18      In challenging the assertion of privilege for the Kezer documents, Great West renews its

19  argument that AEI waived its right to assert attorney-client privilege or work-product protection in

20  the claims file. Except for one document regarding insurance reserve amounts, these arguments

21  were previously rejected during consideration of Great West motion (#49). *See* Order (#121).

22  However, in light of the claimed inadvertent disclosure, the undersigned has now reviewed the

23  Kezer documents (Exs 1-12 attached to Great West Motion (#96)) in the manner agreed between

24  the parties as set forth in the protective order (#38), which permits a party that receives

25  inadvertently disclosed privileged information to file a motion to challenge the assertion of

26  privilege and tender the subject documents for in camera review.

27      As it previously argued, Great West characterizes the Kezer documents as garden variety

28  claim adjusting. It asserts that AEI is abusing the attorney-client privilege and work-product

12

protection by involving attorneys in their ordinary business activities to shield from disclosure information that establishes coverage and insurance bad faith.  Great West specifically highlights Exhibit 11 to support its argument.  It is the undersigned's view that Exhibit 11 presents strong evidence that the privilege log is accurate and the material is privileged.  The document is written by outside counsel to Colorado Casualty's Litigation Unit Leader, responds to a request for review of documents "relative to Mediversal Inc's contract with" a third party employer, specifically refers to a previous coverage opinion from counsel, and opines regarding the possible litigation outcomes. It is not garden variety claim adjusting.  Additionally, the court has reviewed the substance of the remaining Kezer documents and finds that claim of privilege is well founded.

### 2.  AEI Documents

Great West also challenges the assertion of privilege relating to the AEI documents, which are the subject of Great West Motion (#124) and AEI's claw back letter dated May 28, 2013.  The Court has little trouble concluding that the documents were properly identified on privilege logs and, based on a review of the parties' description of the documents, it certainly appears the documents are privileged.

The documents, however, were not tendered with the motion so the Court has not been able to analyze the claim of privilege based on a review of the actual documents.  Near the end of its motion, Great West requests that the Court grant it leave to examine the AEI documents and present arguments under seal regarding the contents of the documents and whether the privilege claim is valid.  The Court does not disagree that courts often analyze the content of documents to resolve claw back disputes.  The Court disagrees, however, that leave to present the documents is appropriate in this instance.  Great West cites no law, rule, or agreement that supports its added procedural requirement that leave be requested before allegedly privileged documents may be submitted for the Court's review and consideration.

The request for leave is not supported by the operative protective order or Rule 26(b)(5)(B). The protective order provides that in the event there is a claim of inadvertent production, the receiving party must within seven (7) business days either return or certify the destruction of all such documents or "after attempting to resolve any dispute with opposing counsel informally, file a

motion to challenge the assertion of privilege <u>and tender the subject documents for in camera review with the motion</u>." *See* Protective Order (#38) at ¶ 12 (emphasis added).  This portion of the protective order, upon which Great West exclusively relied in support of its motion to strike (#131), clearly provides that documents subject to a claim of privilege must be submitted in camera with the motion.  By failing to submit the AEI documents in camera, Great West failed to comply with the requirements of the agreed protective order.

Additionally, Rule 26(b)(5)(B) provides that if information is produced subject to a claim of privilege in discovery, a party that received the information "may promptly present the information to the court under seal for a determination of the claim."  Rule 26(b)(5)(B) was added as part of the 2006 amendments to the Federal Rules.  It was "added to provide a procedure for a party to assert a claim of privilege or trial-preparation material protection after information is produced in discovery in the action and, if the claim is contested, permit any party that received the information to present the matter to the court for resolution."  *See* Advisory Comm. Notes to 2006 Amendments.  Fed. R. Civ. P. 26(b)(5)(B).  The term "promptly" is not defined in the rule and the Court has been unable to find any case law to aid in determining its meaning.  Nevertheless, the Court may consider "any agreement[] the parties reach regarding issues of privilege and or trial-preparation material protection . . . . [s]uch agreements ordinarily control if they adopt procedures different those in Rule 26(b)(5)(B)."  *Id*.

Here, the parties agreed to a strict time line and process for filing motions to challenge claims of privilege after an inadvertent disclosure in the protective order.  The process has not been followed by Great West as it relates to the AEI documents.  Therefore, the Court denies the request to file additional briefing and finds Great West has forfeited its chance to challenge the assertion of privilege by failing to comply with the express procedural requirements to which it previously agreed.[4]  Consequently, the Court finds that the AEI documents are privileged.

---

[4] The Court makes the separate finding that whatever "promptly" may mean in the context of Rule 26(b)(5)(B), it certainly requires more than what has been offered by Great West in this instance.  Rather than provide the material under seal with the motion, Great West seeks to extend this dispute and submit even more briefing on the issue.  By the time the briefing on such a request were complete and the Court was able to conduct a hearing, approximately four (4) months will have passed from the date the motion was filed.  The Court is not

### D.  Rule 502

Having determined that the Kezer documents and AEI documents are privileged, the Court turns to the issue of whether AEI should be permitted to claw back the documents.  The first question that must be addressed is whether the language in the Scheduling Order (#24) and Protective Order (#38) precludes further analysis under Fed. R. Evid. 502(b).  It is AEI's position that the parties agreed that inadvertently disclosed privileged materials would be returned irrespective of the care taken by the disclosing party.  AEI argues that such an outcome is supported by Fed. R. Evid. 502(d) and (e).  Great West does not dispute that parties can enter into such agreements, but disagrees that the scheduling order and protective order constitute such agreements.  It is Great West's contention that AEI is engaging in a creative reinterpretation of a general non-waiver clause, which does not supplant analysis under Rule 502(b).

This dispute turns on whether the parties entered into an enforceable claw back agreement and, if so, the extent of that agreement.  As stated in *Rajala v. McGuire Woods, LLP*, 2010 WL 2949582 (D. Kan.), "[s]o-called 'claw back' provisions 'essentially undo a document production' and allow the return of documents that a party belatedly determines are protected by the attorney client privilege or work product immunity."  *Id* at *3 (citing *United States v. Sensient Colors, Inc.*, 2009 WL 2905474 *2 n. 6 (D. N.J.)).  Rule 502 serves two major purposes: (1) resolving longstanding disputes about the effect of certain disclosures of privileged information–specifically disputes involving inadvertent disclosure and subject matter waiver and (2) respond to the widespread complaint that litigation costs necessary to protect against waiver of privilege have become prohibitive due to the concern that any disclosure will operate as a subject matter waiver of all protected communication.  *See* Fed. R. Evid. 502 (Advisory Comm. Explanatory Note, Rev.

---

inclined to extend this dispute any further.

The Court also notes that under its Local Rules, it is not necessary to first obtain leave before filing a motion or documents under seal.  "[P]apers filed with the Court under seal shall be accompanied by a motion for leave to file those documents under seal . . . . and remain sealed until such time as the Court may deny the motion to seal or enter an order to unseal them, or the documents are unsealed pursuant to Local Rule." Local Rule 10-6(b).  Thus, not only does the request for leave fail to comply with the parties' agreement and Rule 26(b)(5)(B), it is not compliant with Local Rules.

11/28/2007). The rule "seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of [privileged information]. Parties . . . need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable." *Id*.

Rule 502(d) and (e) provide important tools in the effort to effectuate the intent of Rule 502 as a whole. Rule 502(d), entitled "Controlling Effect of a Court Order," provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court–in which event the disclosure is also not a waiver in any other federal or state proceeding." Rule 502(e), entitled "Controlling Effect of a Party Agreement," provides that "[a]n agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order." Subsections (d) and (e) allow for the enforcement of claw back provisions and agreements. *Rajala*, 2010 WL 2949582 *4. Claw back provisions and agreements can limit the costs of privilege review and retention. *See* Fed. R. Evid. 502 (Advisory Comm. Explanatory Note, Rev. 11/28/2007) ("For example, the court order may provide for return of documents without waiver irrespective of the care taken by the disclosing party; the rule contemplates enforcement of claw back and quick peek arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product.") (citing *Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280, 290 (S.D.N.Y.). In explaining 502(e), the Advisory Committee stated that "[s]ubdivision (e) codifies the well-established proposition that parties can enter an agreement to limit the effect of waiver by disclosure between or among them." *See* Fed. R. Evid. 502 (Advisory Comm. Explanatory Note, Rev. 11/28/2007).

The parties do not disagree with the general proposition that parties may enter an agreement supplanting the default procedures set forth in Rule 502(b). It is AEI's position that language found in the Scheduling Order (#24) and Protective Order (#38) supplants the procedures of Rule 502(b). The scheduling order provides:

> **3. Inadvertent Disclosure/Clawback**: The parties agree to an order regarding claims of privilege, or of protection as trial-preparation material, asserted after inadvertent production as follows: Such materials shall be returned immediately upon discovery by the recipient and such information shall not be admissible at trial, unless such material would

16

otherwise be discoverable or admissible."

(#24) at ¶ 3.  The relevant portion of the protective order provides:

> 12.  **Inadvertent Disclosure**.  Nothing in this protective order abridges applicable law concerning inadvertent disclosure of a document that the Disclosing Party believes contains attorney-client communications, attorney work product, or otherwise privileged information.  If a party inadvertently discloses documents or information subject to a claim of privilege or work product protection, such disclosure will not waive otherwise applicable claims of privilege or work product protection under applicable law.  Upon discovery by the Receiving Party, or receipt of written notice from the Disclosing Party identifying privileged or protected Documents that were inadvertently produced, the receiving party shall within seven (7) business days either: (a) return or certify the destruction of all such documents, all copies, and any work product or portions of any work product containing or reflecting the contents of the subject materials; or (b) after attempting to resolve any dispute with opposing counsel informally, file a motion to challenge the assertion of privilege and tender the subject documents for in camera review with the motion.

(#38) at ¶ 12.

AEI claims these provisions protect both parties from inadvertent disclosures and effectuate the underlying purpose of Rule 502.  It urges the Court not to impose rigid formulaic requirements as a prerequisite to entering into such an agreement, arguing such requirements are not appropriate and invite unnecessary discovery disputes by parties seeking strategic advantage.  AEI further argues that the language of the scheduling order that inadvertently disclosed privileged information "shall not be admissible at trial, unless such material would otherwise be discoverable or admissible" means that privileged documents may be discoverable if based on a reason distinct from inadvertent production, which it asserts is not the case here.  The protective order, according to AEI, clearly contemplates that the only challenge available to a party that received inadvertently produced information is whether the information is privileged in the first instance.  If privileged, the information must be returned without resort to analysis under Rule 502(b).

Great West disputes that either the language of the scheduling order or protective order supplants analysis under Rule 502(b) because the language in the orders is not sufficiently adequate and does not include the "concrete directives" regarding each prong of Rule 502(b).  *See U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3025111 (D. Md.) ("To find that a court order or agreement under Rule 502(d) or (e) supplants the default Rule 502(b) test, courts have required that

concrete directives be included in the court order or agreement regarding each prong of Rule 502(b)."). Great West argues that the failure to provide specific opt-out language is dispositive of this issue because courts require it when parties are represented by "sophisticated counsel." *United States v. Sensient Colors, Inc.*, 2009 WL 2905474 (D. N.J.).

The Court respectfully disagrees that an order or agreement entered into under Rule 502(d) or (e) requires "concrete directives be included in the court order or agreement regarding each prong of the [Rule 502(b)] analysis." *See Settlers*, 2012 WL 3025111 *5. The text of the rule does not contain or support such rigid, formulaic requirements. There is no requirement that, in order to supplant Rule 502(b), an agreement provide adequate detail regarding "what constitutes inadvertence, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver." *Id*. In many instances, such requirements would lead to illogical results. For example, even if parties included an express provision that they were entering into an enforceable claw back agreement that supplants Rule 502(b), under *Settlers*, the agreement would not be enforceable if it did not include details about the factors set forth in the precise provision sought to be supplanted. Such an outcome defeats the purposes of Rule 502.

The undersigned also respectfully disagrees with the notion that "sophisticated counsel" must include specific opt-out language. *See Sensient Colors*, 2009 WL 2905474 *2 ("Plaintiff and Sensient are represented by sophisticated counsel. If they intended to implement a 'clawback' provision this would have been specifically mentioned."). There is no accurate gauge of "sophistication" that could reliably be used to determine when a specific opt-out provision is required. Most attorneys believe they are sophisticated. Despite that, legal history is filled with seemingly sophisticated attorneys engaging in remarkably unsophisticated behavior. However, even though the rule does not require the type of rigid requirements identified in *Settlers* or *Sensient*, the inclusion of plain language articulating the parties desire to supplant 502(b) is obviously advisable. Upon close inspection of the cases cited by Great West, including *Settlers* and *Sensient*, the underlying problem in cases reviewing agreements allegedly supplanting Rule 502(b) generally comes down to poorly drafted claw back agreements.

It goes without saying that parties must adequately articulate the desire to supplant analysis

18

under Rule 502(b) in any agreement under Rule 502(d) or (e).  In determining whether such agreements have been entered, the Court looks to the language of the agreement.  An order based "on a written agreement between the parties is subject to the rules of contractual interpretation, including that the agreement should be enforced in accordance with the ordinary meaning of the language used in the agreement."  *See Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.*, 2007 WL 2407038 *2 (D. Nev.) (Interpreting a confidentiality provision of an agreed protective order ) citing *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 418 (N.D. Ill. 2006); *see supra* at 10.  An agreed protective order "should be given a reasonable or common sense interpretation in light of its purposes."  *Koninklijke*, 2007 WL 2407038 (citing *In re Dual-Deck Video Cassette Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (holding that a protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose)).

Here, the Court disagrees with Great West that the provisions at issue are general non-waiver provisions that merely express the parties' intent not to subject themselves to a strict liability approach to waiver.  *See* Reply (#130) (citing *Sensient*, 2009 WL 2905474 *2).  Great West relies almost exclusively on the decision in *Sensient* to support its position.  However, upon close inspection, the language at issue in *Sensient* is far less specific than the language at issue here.  In *Sensient* the court was reviewing two provisions.  The first, contained in the parties scheduling order, stated: "Non-waiver: By exchanging documents or information with each other, the Parties do not waive any privilege, confidentiality or other protection from production that otherwise applies to such documents or information."  *Sensient*, 2009 WL 2905474 at *2 n. 4. The second, also contained in the scheduling order, stated: "The Parties agree that the inadvertent production of privileged documents or information (including ESI) shall not, in and of itself, waive any privilege that would otherwise attach to the document or information produced."  *Id*.  The *Sensient* court focused on the language "in and of itself" to hold that mere production would not waive privilege.

In this matter, the language in the scheduling order falls under a heading specifically entitled "Inadvertent Disclosure/Clawback."  It is not framed as a general non-waiver clause.  Additionally, the language at issue here does not speak in broad generalities regarding waiver, it

19

outlines specific action required from the receiving party when it receives information subject to a claim of privilege after inadvertent production. "Such materials <u>shall</u> be returned immediately upon discovery by the recipient and such information <u>shall</u> not be admissible at trial. . . ." (#24) at ¶ 3 (emphasis added). The language of the protective order is equally clear. The disclosure of a document that is subject to a claim of privilege or work product protection "will not waive otherwise applicable claims of privilege or work product protection under applicable law." In other words, it does more than merely preserve privilege, it requires return of the inadvertently produced privileged material and expressly states that waiver will not occur under applicable law.

The Court also rejects the argument that the pertinent language is intended to preserve the applicability of Rule 502(b). There is no need to preserve applicability of Rule 502(b). It applies as a default in the event there is no agreement otherwise. It is not a plausible interpretation for the parties to have negotiated an agreement that Rule 502(b) applies when it applies as a default absent an agreement otherwise. This conclusion is supported by the language of the protective order which states that inadvertent production "will not waive otherwise applicable claims of privilege or work product protection under applicable law." The applicable law contemplated by this language would necessarily includes Rule 502(b). If the parties agreed that there "will not" be waiver under Rule 502(b), it stands to reason that the analysis need not be undertaken.

Contrary to its assertion, the "preservation clause" identified by Great West does not merely preserve application of Rule 502(b) as suggested. Great West asks that the Court read the first sentence of paragraph 12 in the protective order to the exclusion of the remainder of the paragraph. Under well-settled principles of contract interpretation, "specific provisions control over more general terms." *E.g. Feibusch v. Integrated Device Technology, Inc. Employee Ben. Plan*, 463 F.3d 880, 886 (9th Cir. 2006). The terms must be interpreted to give full meaning and effect to all of the provisions. *Id*. The term at issue is not limited, as suggested, to the old, harsh common law rule of waiver. It encompasses all of Rule 502, including subsections (d) and (e). The qualifier "inadvertent" merely makes the necessary distinction between disclosure that is inadvertent and disclosure that is something else. There are situations where disclosure of privileged information is either intentional or required. A variation of the "preservation clause" argument is Great West's

20

1   assertion that the language "unless such material would otherwise be discoverable or admissible"

2   means Rule 502(b) applies.  The Court disagrees.  The common sense understanding of that

3   language is that privileged documents may be otherwise admissible–i.e., for reasons unrelated to

4   inadvertent production.

5          Lastly, the Court rejects the argument that the "challenge" clause in the protective order

6   requires application of Rule 502(b).  It does not.  Rule 502 "makes no attempt to alter federal or

7   state law on whether a communication or information is protected under the attorney-client

8   privilege or work-product immunity as an initial matter."  *See* Fed. R. Evid. 502 (Advisory Comm.

9   Explanatory Note, Rev. 11/28/2007).  The parties in this matter sensibly agreed to a process

10  whereby a party that receives information subject to a claim of privilege may challenge the

11  assertion of privilege.  Whether information is privileged in the first instance is not a question

12  answered by resort to Rule 502(b).

13         Ultimately, the common sense interpretation of the claw back provisions at issue supports

14  the conclusion that the parties had an agreement that inadvertently produced documents subject to a

15  claim of privilege may be challenged as to the claim of privilege.  However, it is the Court's view

16  that the parties' agreement clearly provides that inadvertently produced documents, upon a

17  determination that the documents are privileged, must be returned without waiver to the disclosing

18  party regardless of the care taken by the disclosing party.  Rule 502 contemplates that parties may

19  enter such agreements and that courts will enforce them.  Well crafted claw back agreements are a

20  critical tool utilized, in large part, to avoid excessive costs and avoid unnecessary disputes.  The

21  undersigned is not willing to permit a party that has entered into such an agreement to use a

22  linguistic scalpel to excise itself from provisions of an agreement wilfully entered that the party no

23  longer viewed as beneficial.  Such agreements are intended to benefit all parties thereto and should

24  not be casually cast aside.  As a result, the AEI documents are not subject to waiver based on the

25  parties' agreement to supplant analysis under Rule 502(b).  The Kezer documents, however, present

26  a different issue.

27         **E.  Rule 26(a)(2)(B) Expert Report**

28         The question of whether the Kezer documents are discoverable stems from the undisputed

21

1  fact that AEI disclosed the documents to its retained expert.  As such, Great West urges the Court

2  to find and follow a "bright-line rule" requiring disclosure of the of Kezer documents.  Among

3  other things, Great West points to the retained expert's deposition testimony where he testified that

4  he reviewed all the documents provided by AEI to prepare his report to support its request.  AEI

5  concedes that the Kezer documents were disclosed with "several thousand pages of scanned files"

6  to its retained expert.  It argues, however, that the documents were inadvertently disclosed and not

7  considered by the expert in forming his expert opinion and, therefore, privilege has not been

8  waived and the documents are not subject to disclosure.

9       AEI expends great effort arguing that disclosure of the Kezer documents was inadvertent

10  and should be returned pursuant to either the parties' agreement or, alternatively, pursuant to Fed.

11  R. Evid. 502.  As previously noted, the scheduling order includes the language that inadvertently

12  produced privileged or trial-preparation material "shall be returned immediately upon discovery by

13  the recipient and such information shall not be admissible at trial, <u>unless such material would</u>

14  <u>otherwise be discoverable or admissible.</u>"  (#24) at ¶ 3 (emphasis added).  There are instances

15  where otherwise privileged information is discoverable.  *See* Fed. R. Evid. 502 (Advisory Comm.

16  Explanatory Note, Rev. 11/28/2007) ("Other common-law waiver doctrines may result in a finding

17  of waiver even when there is no disclosure of privileged information or work product."  Such

18  instances include reliance on an advice of counsel defense, which waives the privilege with respect

19  to the attorney-client communications pertinent to the defense (*see e.g. Nguyen v. Excel Corp.*, 197

20  F.3d 200 (5th Cir. 1999)), or allegations of legal malpractice, which waive confidential

21  communications under the circumstances (*see Ryers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983)).

22  The Kezer documents do not fall into either of the aforementioned categories.  Nevertheless, it is

23  the Court's view that the Kezer documents fall outside of the parties' claw back agreement and

24  Fed. R. Evid. 502.

25       The Kezer documents were initially provided to AEI's expert as part of the package of

26  materials to be used in forming his expert opinion.  They were subsequently disclosed to Great

27  West as part of the Rule 26(a)(2)(B) expert report for Mr. Kezer.  The disclosure of information to

28  an expert occurs in a different context than Fed. R. Evid. 502.  *See MVB Mortgage Corp. v. FDIC*,

1    2010 WL 582641 *4 (S.D. Ohio).  As stated in *MVB Mortgage*, "Not only is the disclosure

2    typically more limited in scope, but counsel have a much greater degree of control over the timing

3    and content of that disclosure."  2010 WL 582641 *4.  In the context of an expert report, "[i]t is

4    irrelevant whether the documents were inadvertently sent . . . ."  *See Fajardo v. Pierce County*,

5    2009 WL 1765756 *2 (W.D. Wash.); *see also Garfinkel v. Gerbaz*, 2009 WL 4611477 (D. Colo.)

6    (citing with approval the conclusion in *Fajardo* that it is irrelevant whether information was

7    inadvertently disclosed to an expert and "that information inadvertently disclosed to a parties

8    expert, thus ringing the bell, cannot be 'unrung.'").  The Court agrees that it is irrelevant whether

9    documents provided to an expert and subsequently disclosed as part of an expert report were

10   disclosed inadvertently.  AEI must show that the Kezer documents may be withdrawn or clawed

11   back under the expert reporting requirements of Rule 26.

12        Citing several cases, including the Sixth Circuit opinion in *Regional Airport Auth. of*

13   *Louisville v. LFG, LLC*, 460 F.3d 697, 716 (6th Cir. 2006), Great West asserts that there is a

14   "bright line rule" requiring disclosure of all information provided to a testifying expert.  The Ninth

15   Circuit has cited *Regional Airport* with approval.  *See Ghent v. Wong*, 371 Fed. Appx. 782 n. 2 (9th

16   Cir. 2010); *see also United States v. Sierra Pacific Industries*, 2011 WL 2119078 *7-8 (E.D. Cal.).

17   In *Regional Airport*, the Sixth Circuit discussed the 1993 amendments to Rule 26 requiring parties

18   to submit expert reports for all testifying experts.  It adopted the majority view in what it termed "a

19   bright-line rule requiring disclosure of all information provided to testifying experts, including

20   attorney opinion work product."  *Regional Airport*, 460 F.3d at 714-15.

21        Rule 26(a)(2)(B) expert reports must contain several categories of information, including

22   "the facts or data considered by the witness in forming them."  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).

23   The "bright-line rule" of disclosure cited by Great West was articulated before adoption of the 2010

24   amendments.  Rule 26(a)(2)(B)(ii) was amended in 2010 "to provide that disclosure include all

25   'facts or date considered by the witness in forming' the opinions to be offered, rather than the "data

26   or other information" disclosure prescribed in 1993."  *See* Adv. Comm. Notes (2010 Amendments

27   to Subdivision (a)(2)(B)).  The amendment was specifically intended to "alter the outcome in cases

28   that relied on the 1993 formulation in requiring the disclosure of all attorney-expert

communications and draft reports." *Id*. Importantly, the intention remained that the term "facts or data be interpreted broadly to require disclosure of material considered by the expert, from whatever source, that contains factual ingredients." *Id*.

Rule 26(b)(4) made the change explicit by providing protection against discovery of draft expert reports and attorney-expert communications. Rule 26(b)(4)(B) prohibits disclosure of any draft of any expert reports or disclosures required by Rule 26(a)(2). The Advisory Committee Notes make clear that "[t]his protection applies to all witnesses identified under Rule 26(a)(2)(A) whether they are required to provide reports under Rule 26(a)(2)(B) or are the subject of disclosure under Rule 26(a)(2)(C)." Rule 26(b)(4)(C) "protect[s] communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(B)(C)(i)-(iii). The 2010 Advisory Committee Notes explain that the rule is "designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery. The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any 'preliminary' expert opinions." AEI did not withhold the Kezer documents based upon either Rule 26(b)(4)(B) or 26(b)(4)(C). It has never argued that the Kezer documents are protected under the aforementioned subsections of Rule 26(b)(4). Thus, the Court cannot conclude that withdrawal or claw back of the Kezer documents is appropriate under either subsection.[5]

---

[5] The Kezer documents clearly do not fall under Rule 26(b)(4)(B) because none of the documents is a draft of an expert report or disclosure required by Rule 26(a)(2). Nor could the documents fall under the purview of Rule 26(b)(4)(C) because none of the documents is a communication between the expert and an attorney for AEI. Thus, even if the issue were before the Court, any claim that the documents may be withdrawn or clawed back based on their protected status under Rule 26(b)(4)(B) or (C) would be rejected. Simply put, the Kezer documents do not fall within the parameters of either subsection. AEI concedes as much in its response. See

1    Outside of the rejected request to apply the claw back principles of Fed. R. Evid. 502 to the

2    Rule 26(a)(2)(B) disclosures, the only other argument appears to be that Mr. Kezer did not review

3    or consider the documents at issue.  The Court is not persuaded by this argument.  There is no

4    question that Mr. Kezer received the documents.  Now, after testifying under oath at his deposition

5    that he "looked at the documents that were provided to me . . . went through all of them, and []

6    focused in on portions of them and not on some of the others," Mr. Kezer has submitted a

7    declaration stating otherwise.  His declaration states that he "never reviewed" the Kezer documents.

8    The Court is not inclined to permit an expert who testifies under oath during his deposition that he

9    looked at the documents provided to him to file a *post hoc* declaration that he did not see a

10   specified set of documents–a set of documents that happens to coincide with a contested waiver

11   claim.[6]

12   Moreover, whether a document has been "considered" by an expert is given a broad

13   interpretation.  As stated in *Fajardo*, "[t]he meaning of 'considered' has been interpreted to

14   'encompass' ... all documents and oral communications reviewed by the experts in connection with

15   the formulation of their opinions, but ultimately rejected or not relied upon."  *Fajardo*, 2009 WL

16   1765756 at *3; *see also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995)

17   ("Plaintiff's objection that the documents are not discoverable because [the expert] did not consider

18   them in reaching his opinion is without merit. Where the expert has acquired information relevant

19   to his opinion, [a party] should not be bound by his statement that he did not consider it.")).  The

20   presentment of a self-serving declaration that contradicts prior testimony given under oath is not

21   sufficient to demonstrate that the materials were not considered and accentuates the risk that the

22   lawyer do the thinking for the expert.  The declaration presents a situation which the rules seek to

23   avoid: requiring the court to explore the expert's subjective mental process and creating an

24   

25   Resp. (#107) at 8:19-22.

26       [6]  The Court further notes that the deposition in this matter occurred on March 21, 2013.  Great West

27   filed its motion (#96) challenging the request for return of the documents and specifically setting forth Kezer's
     deposition testimony on April 2, 2013.  There is no indication that Mr. Kezer made any changes in form or

28   substance to his deposition testimony under Rule 30(e).

1   unwieldy rule that eliminates certainty.  *See Garfinkel*, 2009 WL 4611477 at *2.

2          Lastly, it appears AEI may also be arguing the that the "bright-line rule" requiring

3   disclosure of documents provided to a retained expert was eliminated by the 2010 amendments.

4   The Court disagrees that the 2010 amendments went so far as to eliminate the bright-line rule

5   altogether.  The 2010 amendments were meant to halt two types of disclosures: an expert's draft

6   reports and communications between a retained reporting expert and the retaining party's attorney.

7   The intention remains that "facts or data be interpreted broadly" and "[t]he disclosure obligation

8   extend[] to any facts or data 'considered' by the expert in forming the opinions, not only those

9   relied upon by the expert."  *See* Adv. Comm. Notes to 2010 Amendments.

10         AEI has not presented anything to the Court that would support the conclusion that the

11  privilege applicable to the Kezer documents has not been waived.  The documents were disclosed

12  to the expert.  The expert testified, under oath, that he reviewed the documents he was provided.

13  The documents were disclosed to Great West as part of the Rule 26(a)(2) expert report. The

14  documents were not withheld under Rule 26(b)(4)(B) or (C).  Consistent with applicable law and

15  rules, the Court finds that the privilege attaching to the Kezer documents has been waived.

16         Based on the foregoing and good cause appearing therefore,

17         **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Ruling that No Valid Privilege

18  Applies (#96) is **GRANTED**.

19         **IT IS FURTHER ORDERED** that Plaintiffs' Motion (#124) is **DENIED**.  Plaintiffs'

20  counsel shall immediately return all documents, as identified herein as the AEI documents, to

21  Defendants' counsel.

22         **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (#131) is **GRANTED**.  As

23  a result thereof, the Clerk of Court is instructed to strike the following: Defendants' Motion (#127),

24  Plaintiffs' Response (#133), and Defendants' Reply (#135).

25  ///

26  ///

27  ///

28  ///

1    **IT IS FURTHER ORDERED** that the Clerk shall strike the following: Plaintiffs'

2    Supplemental Brief (#123), Defendants' Supplemental Brief (#129), and Plaintiffs' Response

3    (#134).

4    DATED: September 23, 2013.

5

6

7    _____

**C.W. Hoffman, Jr.**

8    **United States Magistrate Judge**

27